**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.D. and C.B.**

**No. 21-0103** (Harrison County 19-JA-167-2 and 19-JA-168-2)

**MEMORANDUM DECISION**

Petitioner Mother B.D., by counsel Dreama D. Sinkkanen, appeals the Circuit Court of Harrison County's December 29, 2020, order terminating her parental rights to R.D. and C.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Jason M. Glass, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her improvement period and her parental rights without imposing a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a child abuse and neglect petition after petitioner gave birth to drug-exposed R.D. The DHHR outlined an extensive history of Child Protective Services ("CPS") referrals regarding petitioner's drug abuse dating as far back as 2014. Specifically, the DHHR alleged that petitioner had been a patient at the Clarksburg Treatment Center since April 11, 2019, and had tested positive for methamphetamine and amphetamine eight times during the course of her pregnancy with R.D., whose umbilical cord blood tested positive for methamphetamine and Subutex. When interviewed, petitioner admitted to becoming addicted to methamphetamine shortly after C.B.'s birth—approximately seven years prior. Petitioner stated that she had a prescription for Subutex during her pregnancy with R.D. Nurses at the hospital

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

reported petitioner was reprimanded several times for falling asleep with newborn R.D. on her lap or in bed with her as this posed a serious suffocation or fall risk to the infant. Additionally, hospital records indicated that R.D.'s Neonatal Abstinence Score remained elevated due to the high levels of substances in his system. The DHHR concluded that petitioner's substance addiction led to the abuse and neglect of the children. Thereafter, petitioner waived her preliminary hearing.

In November of 2019, the circuit court held an adjudicatory hearing, during which petitioner stipulated to abusing methamphetamine during her pregnancy with R.D. and to having a history of substance abuse, which led to the abuse and neglect of R.D. and C.B. Later that month, the circuit court granted petitioner a post-adjudicatory improvement period, the terms of which required petitioner to complete adult life skills and parenting education classes, cooperate in supervised visits, submit to regular drug screens, undergo a parental fitness and psychological evaluation, and obtain substance abuse treatment to maintain sobriety. At a review hearing held in December of 2019, the agreed permanency plan for the children was reunification with petitioner.

Petitioner underwent a parental fitness and psychological evaluation in January of 2020. The results of the evaluation concluded that petitioner had the parental capacity to care for the children and recommended that petitioner demonstrate six months of sobriety, participate in supervised visitations, obtain her General Education Development certificate, and obtain employment, among other recommendations. At the end of the month, petitioner tested positive for methamphetamine along with her prescribed Suboxone.[2] In February of 2020, petitioner tested positive for methamphetamine and Suboxone twice and tested positive for methamphetamine and Suboxone once in March of 2020. Petitioner missed drug screens in April of 2020 and tested positive for methamphetamine, Suboxone, and marijuana in May of 2020.

In June of 2020, the circuit court held a review hearing upon petitioner's progress during her post-adjudicatory improvement period. The parties agreed that petitioner had successfully completed a drug detoxication program a week prior and had nearly completed parenting and adult life skills classes. However, the parties agreed that petitioner needed to attend long-term substance abuse treatment. Accordingly, the court granted an extension to petitioner's post-adjudicatory improvement period.

On October 6, 2020, the DHHR filed case plans recommending the termination of petitioner's parental rights. The DHHR stated that although petitioner had participated in some aspects of her improvement period, she still had substance abuse issues and had not taken the proper steps to address those issues during her improvement period. Thereafter, petitioner filed a motion for a post-dispositional improvement period, citing her completion of a drug detoxification program in September of 2020 and recent enrollment in a long-term inpatient drug rehabilitation program as a change in circumstances.

On October 13, 2020, the circuit court held a final dispositional hearing. A service provider testified that petitioner completed adult life skills classes in February of 2020 but needed to show

[2]Petitioner's records note that petitioner missed drug screens between January 23, 2020, and February 7, 2020, due to incarceration. However, there is no other explanation about this incarceration in the record.

that she was able to obtain employment and transportation. The provider stated that petitioner completed parenting education classes in July of 2020 but that she needed to show that she was able to provide a safe a healthy environment for the children by obtaining independent housing. By the completion of these classes, petitioner had not obtained stable employment or independent housing, but was using public transportation. The provider acknowledged that in February of 2020, she and petitioner discussed outpatient substance abuse treatment, but petitioner did not enroll at that time and instead went into a seven-day drug detoxification program in June of 2020. In July of 2020, the provider discussed petitioner's need to attend inpatient drug treatment.

Next, the visitation provider testified that petitioner had missed one visit during the month of January of 2020 and that during other visits she did not have money to purchase food or items for the children. When C.B. asked to play games or to buy clothes at the mall, petitioner told her that she would need to borrow money and would bring it on the next visit. However, according to the provider, she explained to petitioner that petitioner should stop making false promises to C.B. The provider stated that petitioner was required to feed the children during visits and could bring the food and drinks with her rather than purchase items at the mall. Despite this requirement, petitioner provided food and drinks for the children for only a few visits. During a visit in February of 2020, the provider observed petitioner nodding off to sleep while holding R.D. and petitioner was late to another visit that month and appeared irritable, telling the provider that she had missed her Suboxone dose. During a couple of visits in April and August of 2020, the provider suspected that petitioner was under the influence of drugs due to her lethargic behavior and drooping eyelids while sitting and holding R.D. The provider stated that petitioner texted her in September of 2020 and said that she did not believe that her substance abuse impacted her ability to parent the children and did not understand why the children were removed from her care. In the provider's opinion, having observed petitioner's supervised visitations for about ten months, petitioner had not made any progress as shown by her showing up late to visits, missing some visits, being difficult to contact due to lost mobile phones, making false promises to C.B., and her minimization of her drug use and how it impacted the children.

According to a DHHR worker, petitioner had taken prescribed Suboxone between September 13, 2019, and February 7, 2020, and tested positive for methamphetamine on February 19, 2020, February 26, 2020, and March 4, 2020. Due to this relapse, the worker had petitioner complete an application for an intensive outpatient drug treatment program, but petitioner failed to follow through with the program. The worker testified that after petitioner tested positive for methamphetamine in May of 2020, she contacted the worker about drug detoxification and long-term drug rehabilitation. Petitioner completed a seven-day drug detoxification the first week of June of 2020, but did not contact the worker again until the end of that month. At that time, the worker told petitioner to seek a twenty-eight-day inpatient program and gave petitioner application packets, which she failed to complete and return to the worker. According to the worker, petitioner did not submit to drug screens in June and July of 2020, and in August and September of 2020, petitioner tested positive for methamphetamine, Suboxone, and marijuana for the two drug screens she submitted. After these relapses, the worker recommended that petitioner again go to drug detoxification and enroll in an inpatient program. The worker stated that petitioner entered another drug detoxification program in September of 2020, and after completion of that program, she enrolled in long-term inpatient drug rehabilitation on October 5, 2020—about one week prior to the dispositional hearing.

Petitioner testified in support of her motion for a post-dispositional improvement period. She stated that she was presently enrolled in a twenty-eight-day inpatient drug rehabilitation program, but she could stay in the program for up to six months. Petitioner admitted that her substance abuse led to the abuse and neglect of the children. She stated that after her relapse in August of 2020, she reached out to the DHHR worker and contacted the West Virginia substance abuse hotline on September 25, 2020, to obtain drug treatment. Petitioner stated that she last tested positive for methamphetamine a couple of weeks prior when she first enrolled into long-term inpatient drug treatment. On cross-examination, petitioner admitted that she did not seek long-term inpatient drug rehabilitation after her first relapse in February of 2020 because she did not want to ask for help and she believed she could obtain sobriety on her own.

Based on the evidence, the circuit court found that petitioner's parenting and adult life skills had not changed, she had no stable housing, missed twenty-three drug screens, and was still in active addiction despite thirteen months of services provided during the pendency of the case. The court noted that "nothing has changed for the positive[,]for the benefit for these . . . children." Accordingly, the circuit court found that petitioner's improvement period was unsuccessful and, thus, a post-dispositional improvement period was not warranted. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by order entered on December 29, 2020.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[3]C.B.'s father successfully completed an improvement period, resulting in the petition against him being dismissed, and the child being reunified with him. R.D.'s father voluntarily relinquished his parental rights, and the permanency plan for that child is adoption by his foster family.

On appeal, petitioner first argues that the circuit court erred in finding that she did not successfully complete her post-adjudicatory improvement period because she substantially complied with the terms and conditions thereof. Petitioner claims that she successfully participated in all services recommended for her and that after her second relapse she obtained long-term inpatient drug treatment. We find petitioner's argument unavailing. While petitioner contends that she completed adult life skills and parenting and education classes, she ignores the fact that she remained without stable employment and independent housing by the dispositional hearing—which were the goals of these classes. Further, although petitioner underwent a parental fitness and psychological evaluation, she failed to follow its recommendations, especially the one requiring that she demonstrate six months of sobriety. Petitioner points out that she completed two separate drug detoxification programs, but fails to mention that immediately after both programs, she continued to use methamphetamine. This includes her recent enrollment in long-term inpatient drug treatment on October 5, 2020, for which she tested positive for methamphetamine upon admission (despite her completion of a drug detoxification program in September of 2020). Petitioner missed twenty-three drug screens, failed to stay in regular contact with the DHHR, failed to act appropriately during supervised visitations, and most importantly, did not follow through with recommended drug treatment until the eve of the final dispositional hearing.

This Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). While it is true that the record shows that petitioner was initially compliant with the terms and conditions of her improvement period prior to her first relapse around January of 2020, petitioner ignores the fact that she was largely noncompliant for the last several months of the improvement period. Here, we find no abuse of discretion in the circuit court's determination that petitioner was unsuccessful in sufficiently improving the conditions of abuse and neglect.

Finally, petitioner argues that the circuit court erred in terminating her parental rights. In her brief, petitioner shifts the blame for her first relapse around January of 2020 from herself to the DHHR by saying that she quit taking Suboxone per the recommendation of the parental fitness and psychological evaluation completed in January of 2020. However, petitioner ignores the fact that the DHHR and the evaluation also recommended intensive outpatient or inpatient drug treatment in light of petitioner's continued methamphetamine use while taking prescribed Suboxone. Indeed, after petitioner obtained another Suboxone prescription around June of 2020, she continued to test positive for methamphetamine, further dampening her argument that not taking the medically assisted treatment led her to relapses. As such, petitioner's argument that she "only began to falter" after she stopped taking Suboxone is unavailing.

5

Petitioner also argues that the circuit court erred in finding that she was habitually addicted to drugs so as to prevent her from parenting the children and that she failed to follow through with recommended drug treatment. Petitioner contends that she participated in services until her first relapse around January of 2020, and that afterwards she attempted to obtain intensive outpatient drug treatment and obtained drug detoxification twice. Petitioner again cites her current enrollment in an inpatient drug rehabilitation program as evidence that she is likely to correct the conditions of abuse and neglect in the near future.

According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights when it makes findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the children's welfare. Further, West Virginia Code § 49-4-604(d)(1) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future includes when

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the [parent has] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

Here, the evidence established that petitioner's continued substance abuse resulted in her inability to adequately parent the children. Despite petitioner's recent admission to an inpatient drug treatment program, the evidence shows that she tested positive for methamphetamine within approximately a week of the final dispositional hearing. Petitioner had thirteen months of the court's supervision and the DHHR's services to address her substance abuse addiction, but remained in active addiction at the time of the dispositional hearing. Therefore, it is clear that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. Further, the circuit court found that termination of petitioner's parental rights was necessary for the children's welfare and in their best interests given petitioner's inability to safely parent the children due to her substance abuse issues.

Finally, petitioner argues that the circuit court should have implemented a less-restrictive alternative disposition. Specifically, petitioner argues that she should have been granted a post-dispositional improvement period. However, for the reasons previously discussed, we find that petitioner was not entitled to a post-dispositional improvement period in light of her failed post-adjudicatory improvement period. In the alternative, petitioner argues that the children's permanency would not have been negatively impacted if she were granted a less-restrictive alternative disposition and cites C.B.'s reunification with her father and that R.D. would likely have remained with the same foster family.

Regarding C.B., we have previously held that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). As such, petitioner cannot establish that termination of her rights was

inappropriate simply because C.B. was reunified with the father. Turning to two-year-old R.D., the Court has held the following:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4.

Finally, based upon the above finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, petitioner was not entitled to a less-restrictive dispositional alternative. We have repeatedly held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court was presented with sufficient evidence upon which to base termination, and we find no error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton